UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**SENTRY SUPPLY INC**            **CASE NO. 2:16-CV-01393**

**VERSUS**            **JUDGE SUMMERHAYS**

**N L M K NORTH AMERICA PLATE LLC**      **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Presently before the court is the Motion for Summary Judgment filed by NLMK North America Plate LLC ("NLMK NA"). The parties have fully briefed the motion and the matter is now ripe for decision.

## BACKGROUND

### 1. Procedural History

Plaintiff, Sentry Supply, Inc. d/b/a Superior Supply & Steel ("Sentry") filed its "Petition for Declaratory Judgment" against Defendant, NLMK North America Plate, LLC ("NLMK NA"), on July 8, 2016 in the 14th Judicial District for the Parish of Calcasieu. The complaint seeks declaratory judgment that Sentry properly withheld the sum of $207,950.39 as compensation for a redhibition claim. Defendant, NLMK NA filed a Notice of Removal based on 28 U.S.C. § 1332, which provides jurisdiction of civil actions where the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff, Sentry, is incorporated in Louisiana and has its principal office address in Sulphur, Louisiana. For purposes of diversity jurisdiction, it is therefore a citizen of Louisiana. See 28 U.S.C. § 1332(c)(1) (a corporation is a citizen in its state of incorporation and its principal place of business). NLMK NA is a limited liability company whose sole member is Top Gun Investment Corp. II ("Top Gun"), a Delaware corporation with its principal place of business located at 15

1

Roemer Boulevard, Farrell, Pennsylvania 16121. Top Gun is therefore a citizen of Delaware and Pennsylvania. *See Id.* NLMK NA is likewise a citizen of Delaware and Pennsylvania for diversity purposes. See *Harvey v. Grey Wolf Drilling Co.,* 542 F.3d 1077, 1080 (5th Cir. 2008) ("the citizenship of a LLC is determined by the citizenship of all of its members.") Accordingly, the parties are completely diverse. The amount in controversy is clearly stated in the complaint as $207,950.39. Accordingly, the Court has jurisdiction over this case under §1332.

NLMK NA has filed a counterclaim against Sentry seeking a judgment for $207,950.39 as the amount due on an open account. Sentry answered the counterclaim and the matter is currently scheduled for trial. NLMK NA filed the present Motion for Summary Judgment.

## 2. Factual History

Defendant NLMK NA is a Delaware limited liability company in the business of selling commercial steel plates to retail customers in the United States.[1] NLMK NA does not own or operate facilities for manufacturing steel plates. To fill customers' orders, NLMK purchases steel plates manufactured by NLMK Clabecq, S.A., NLMK Dan Steel, S.A., and NLMK Verona, S.p.A.[2] On May 6, 2013, Sentry purchased steel plates from ThyssenKrupp Steel Services Trading, a division of ThyssenKrupp Materials NA ("Thyssen").[3] Thyssen is an independent broker that purchases steel plates from third party manufacturers such as NLMK Verona. The steel plates were manufactured by NLMK Verona. There is no dispute the steel plates were defective. Sentry was unable to resolve its complaint over the defective plates with Thyssen.

In late 2013, Sentry and NLMK NA began negotiations over the purchase of steel plates.[4] Sentry's representative raised the problem with the prior Thyssen sale with a salesman for NLMK

---

[1] Affidavit of Thomas Ernst, ¶¶ 2, Exhibit A to Document 28.
[2] Id. at ¶ 4.
[3] Exhibit 12 of Exhibit C to Document 34.
[4] Exhibit A to Document 28 at ¶ 7

2

NA, Thomas Ernst. Based on the discussions, Sentry believed that Ernst would attempt to resolve Sentry's complains over the defective steel plates purchased from Thyssen. However, there is no evidence of any formal agreement to address the prior Thyssen sale nor is there evidence that the later purchases were conditioned on NLMK NA addressing the problems with the prior Thyssen sale. From January 2014 to March 2015, Sentry sent six purchase orders to NLMK NA for steel plates.[5] The steel plates for each of those purchases were manufactured by NLMK Verona. Sentry cited no problems with the steel plates from any of those purchase orders. On July 3, 2014, NLMK NA issued Invoice No. 1046 to Sentry, requesting payment on Purchase Order No. 114892-4 in the amount of $318,558.88.[6] Sentry sent a check dated August 4, 2014 as payment on Invoice No. 1046 in the amount of $110,608.49.[7] The $207,950.39 difference between the August 2014 check and the invoice reflected the amount in dispute regarding the defective plates from the prior transaction involving Thyssen. When NLMK NA started collection efforts, Sentry filed the present Petition for Declaratory Relief seeking a finding that the offset was proper. NLMK NA disputes the offset and that contends Sentry owes them the remaining sum of $207,950.39 due for Invoice 1046.

## LAW AND ANALYSIS

### A. Summary Judgment Standard

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material

---

[5] Exhibit B, ¶ 9 to Document 28.
[6] Exhibit B, ¶ 14; Exhibit B-2 to Document 28.
[7] Id. at ¶ 15.

3

fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The Court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

**B. Sentry's Defense of Set-off Based Upon Redhibition.**

NLMK NA argues that Sentry breached its contractual obligations when it failed to pay the full amount due under Invoice No. 1046. NLMK NA also argues that Sentry is liable for interest on the amount due from the time it was due. La. Civ. Code Art. 2000. Finally, NLMK NA argues that Sentry is liable for attorney fees pursuant to La. R.S. 9:2781, the Louisiana Open Account Statute. Sentry counters that the $207,950.39 it deducted from NLMK NA's invoice was a valid offset for a redhibition claim arising from the prior purchase of steel plates from Thyssen. The

4

court first addresses Sentry's reliance on redhibition as a defense to NLMK NA's open account claim.

### 1. Does Sentry Satisfy the Elements of a Redhibition Claim?

Sentry contends that it has a claim for redhibition under Louisiana law based on the original sale of defective plates by Thyssen, and that it is entitled offset this claim against the amount owed to NLMK NA. Louisiana Civil Code Article 2545 provides that:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use or fruits.
>
> A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.

Redhibition thus allows a buyer to rescind a sale, in whole or in part, because of a redhibitory defect in the product purchased. *Ahrens v. TPLC, Inc.*, 955 F.Supp. 54, 56 (E.D. La. 1997). But an essential element of a redhibition claim is that the seller must have an ownership interest in the defective goods. *Id.* at 57 (agreeing that "Louisiana courts have consistently held that to be a seller under the law of redhibition, a transfer of ownership must take place").

This "transfer of ownership" requirement is fatal to Sentry's redhibition claim. The parties do not dispute that the steel plates purchased from Thyssen were defective or that Thyssen transferred ownership when it sold the defective plates to Sentry. NLMK NA, however, was not a party to the Thyssen sale and had no ownership interest in the defective plates. Defendant's affiliate, NLMK Verona, had an ownership interest in the defective plates that was transferred to Thyssen. But NLMK NA is a separate corporate entity from NLMK Verona, which is not a party

5

in this case. Sentry cannot, therefore, rely on a potential redhibition against Thyssen and NLMK Verona to offset amounts owed to NLMK NA that arise from a separate and distinct transaction.

### 2. Can Sentry Rely on Louisiana's Single Business Enterprise Doctrine to Assert a Redhibition Claim Against NLMK NA?

Sentry argues next that NLMK NA had an ownership interest in the defective Thyssen plates because NLMK NA and NLMK Verona should be considered a "single business enterprise" under Louisiana law. Sentry thus seeks to pierce NLMK NA's corporate veil and hold it liable for claims against NLMK Verona. The concept of the "corporate veil" is rooted in the protections afforded by the limited liability of corporate owners. In Louisiana and elsewhere, a corporation is deemed a distinct legal entity separate from its shareholders. *See Riggins v. Dixie Shoring Co.*, 590 So.2d 1164, 1167 (La.1991); *Brennan's, Inc. v. Colbert*, 85 So.3d 787, 791 (La.App. 4th Cir.2012). This distinction between corporation and shareholder insulates a corporation's shareholders from personal liability for the corporation's debts. *Riggins*, 590 So.2d at 1167; *M. Hayes & Associates Realty Co., LLC v. Moliere*, 982 So.2d 173, 178 (La.App. 5th Cir.2008); La. R.S. 12:93 (codifying the limited liability of corporate shareholders). Courts have recognized that this limitation of shareholder liability "promote[s] commerce and industrial growth by encouraging [shareholders] to make capital contributions to corporations without subjecting all of their personal wealth to the risks of business." *Smith v. Cotton's Fleet Service, Inc.*, 500 So.2d 759, 762 (La.1987). Applying this principle of limited liability, parent corporations can create and conduct their business through separately incorporated subsidiaries without incurring liability for the debts of their subsidiaries. The fact that a subsidiary is wholly owned and controlled by its parent corporation -- or that a parent corporation and a subsidiary share management and offices -- does not automatically open a parent company to liability for the debts of its separately incorporated subsidiaries. *See Riggins*, 590 So.2d at 1168–69.

6

Louisiana courts (like other courts) recognize that the corporate veil may be pierced to impose personal liability on a corporation's owners under certain circumstances. *Id.* (adopting a five-part test for determining whether to pierce the corporate veil). Traditional veil-piercing doctrines are generally limited to cases where the separate existence of the corporation has been abused and where the court finds that piercing the corporate veil is necessary to remedy fraud, illegality, or other inequitable conduct by the corporation's shareholders. *Id.* In *Green v. Champion Ins. Co.*, 577 So.2d 249 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (1991), the court created a new distinct doctrine for disregarding the legal distinctions between separate corporate entities and imposing personal liability for the debts of one corporation on a separate, but affiliated company. The *Green* case involved the well-publicized failure of a large insurance company with multiple affiliated "sister" companies. Courts pierce the veil between corporation and shareholder in traditional veil-piercing cases. In *Green*, however, there was no shareholder relationship between the failed insurer and its sister companies. Nevertheless, the court allowed the liquidator of the failed insurance company to seize not only the insurance company's assets, but also the assets of its sister companies. The court held that "the legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation." 577 So.2d at 257. According to the court, when "corporations represent precisely the same interest" or "a single corporation has been fragmented into branches that are separately incorporated and are managed by a dominant or parent entity, or have interlocking directorates," the separate corporate existence of each affiliated company may be disregarded regardless of whether there is a shareholder relationship. *Id.* After *Green*, courts outside of Louisiana's First Circuit have applied the single business enterprise doctrine in varying forms, although some commentators have criticized the broad scope of the doctrine and some courts have attempted to tether the doctrine to more traditional veil-piercing doctrines. *See, e.g.,*

7

Kyle M. Bacon, "The Single Business Enterprise Theory of Louisiana's First Circuit: An Erroneous Application of Traditional Veil-piercing," 63 La. L. Rev. 75 (Fall 2002); *Town of Haynesville, Inc. v. Entergy Corp.*, 956 So.2d 192, 195–99 (La.App. 2d Cir.2007) (applying traditional veil-piercing requirements to claim that affiliated entities were a single business enterprise).

Here, Sentry's reliance on *Green* and the "single business enterprise" doctrine assumes that Louisiana law applies to the question of whether Sentry can disregard NLMK NA's separate corporate existence. NLMK NA argues that Delaware law applies to this question and that Delaware does not recognize the single business enterprise doctrine. In diversity cases, the law of the forum state governs the proper choice of law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As such, the court must apply Louisiana's choice of law provisions to determine which state's law will apply to the analysis of whether NLMK's corporate structure should be disregarded. In Louisiana, the relevant choice of law provision is La. Civil Code Article 3515, which states that:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Courts applying Louisiana's choice of law provision to questions involving corporate structure and internal governance have uniformly concluded that the law of the state of incorporation governs these questions. See *In re CLK Energy Partners, LLC*, 2010 WL 1930065 at *6 (Bankr. W.D. La. 2010); *Precht v. Global Tower LLC*, 2016 WL 7443139 at *3 (La. W.D. 2016); *In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 787 (Bankr. W.D. La. 2013); *Patin v.*

*Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 646–47 (5th Cir. 2002); *S.F. Estates, S.A. v. Westfeldt Bros.*, 1998 WL 12243, at *4 (E.D. La. Jan. 13, 1998); *Powerup of Se. La. Inc. v. Powerup U.S.A., Inc.*, 1994 WL 543631, at *3 (E.D. La. Oct. 5, 1994); *Energy Coal S.P.A. v. Citgo Petroleum Corporation*, 836 F.3d 457 (5th Cir. 2016). Sentry argues that the application of the law of the state of incorporation is not automatic but rather that the *Energy Coal S.P.A.* case requires an additional analysis of the contacts of each relevant state to the transaction at issue. Sentry is correct that a proper choice of law analysis does not disregard other state contacts (including forum state contacts) in favor of the state of incorporation. The state of incorporation is not the presumptive law to apply to questions of corporate governance. However, as noted in the very case that Sentry relies upon, where a state's sole connection is that it is the state of incorporation, "[t]hat single tie is an important one."[8] In *Energy Coal S.P.A.*, the Fifth Circuit held that "[a]pplying Louisiana law to hold a Delaware corporation responsible for its foreign affiliate's alleged breach of a contract in Venezuela would substantially undermine the high bar Delaware sets for disregarding corporate separateness."[9]

Here, as acknowledged by Sentry in the Sur-Reply to NLMK's Motion for Summary Judgment[10], the relevant contacts in this case include not just Louisiana, but also Texas, Pennsylvania, and Italy. When a representative of NLMK NA met with representatives of Sentry, that meeting took place in Houston.[11] The invoices for steel plates from Sentry, likewise came from an address in Houston.[12] The steel plates were manufactured in Verona, Italy and shipped into a port in Texas. NLMK NA's offices were in Pennsylvania at the time of the transactions, and Sentry maintains facilities in Texas and Louisiana. Given these contacts, the parties' expectations

---

[8] *Energy Coal S.P.A. v. Citgo Petroleum Corporation*, 836 F.3d 457, 462 (5th Cir. 2016).
[9] *Id.* at 463
[10] Doc. 44, p. 8.
[11] Affidavit of Thomas Ernst. Exhibit A to Document 28.
[12] Affidavit of Thomas Ernst. Exhibit A-3 to Document 28.

and the strength of Louisiana's contacts to the underlying transactions do not outweigh Delaware's interest in regulating the internal affairs of Delaware corporations. As noted by the Fifth Circuit in *Energy Coal*, applying Louisiana law in the present case to hold a Delaware corporation responsible for its foreign affiliate's actions "would substantially undermine the high bar Delaware sets for disregarding corporate separateness."

Sentry further suggests that, because NLMK NA's open account claim and request for attorneys' fees is governed by Louisiana law, Sentry's attempt to pierce the corporate veil as a defense to that claim should also be governed by Louisiana law. This monolithic approach to choice of law is inconsistent with Louisiana choice-of-law rules, which recognize the concept of "dépeçage"—issue-by-issue analysis. *Rigdon v. Pittsburgh Tank & Tower Co., Inc.*, 682 So.2d 1303, 1306 (La. App. 1 Cir. 11/8/96) (analyzing the use of the term "issue" in La. C.C. arts. 3515 and 3542). Under Louisiana's dépeçage concept, "courts must utilize an issue-by-issue analysis which may result in laws of different states being applied to different issues in the same dispute." *Id.* (citing La. C.C. art. 3515, cmt. (d)). Here, even though Louisiana law applies to NLMK NA's open account claim, the court concludes (consistent with the concept of dépeçage) that Delaware law applies to questions involving NLMK NA's corporate form. Because Delaware does not recognize the "single business entity" doctrine, Sentry cannot rely on this doctrine to support its claim that NLMK NA had an ownership interest in the defective Thyssen steel plates and thus was a "seller" for purposes of redhibition.

### 3. Availability of Other Delaware Veil Piercing Doctrines.

While Delaware has not adopted the single business enterprise doctrine as a means of piercing the corporate veil,[13] Delaware does recognize the traditional alter ego doctrine as a means

---

[13] *Precht*, 2016 WL 7443139 at *4

10

to pierce the corporate veil of members of a corporate group.[14] Under Delaware law, in order to demonstrate that one entity is the alter ego of another, a party must show: (1) that the entities operated as a "single economic entity": and (2) that "an overall element of injustice or unfairness is present." *In re CLK Energy Partners, LLC*, 2010 WL 1930065 at *6 (Bankr. W.D. La. 2010) (citing *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1085 (D. Del. 1990)). While proof of actual fraud is not required to pierce the corporate veil on an alter ego theory, courts have held that "something like fraud must be proven" and that a party seeking to pierce the corporate veil must prove "reasonable reliance and intent to deceive." *In re Moll Industries, Inc.*, 454 B.R. 574, 591 (Bankr. D. Del. 2011) (citing *In re Foxmeyer*, 290 B.R. 229, 236 (Bankr.D.Del.2003)); *Wallace v. Wood*, 752 A. 2d 1175, 1184 (Del. Ch.1999) (fraud or similar injustice must be demonstrated in order to pierce the corporate veil under Delaware law).

Turning to the summary judgment record, the NLMK corporate group is a global steel organization consisting of numerous subsidiaries that manage the various stages of the steel-making process, which includes raw material extraction down to sales.[15] It styles itself as "NLMK Group" due to its vertically-integrated corporate structure. To further its steel business, NLMK Group divides itself into subsidiary companies that control specific aspects of its business. OJSC NLMK, a Russian entity, is at the top of NLMK Group's corporate chain.[16] OJSC is the sole owner of the Russian entity, NLMK Overseas Holdings, LLC.[17] From there, the corporation breaks into three branches. NLMK Overseas Holdings owns 100% of Top Gun Investment Corporation II ("Top Gun"), 100% of NLMK International, and 90.97% of Steel Invest & Finance S.A.[18] Top Gun owns 100% of NLMK North America Plate, LLC, in addition to the American mills and

---

[14] *In re Gulf Fleet Holdings, Inc.* 491 B.R. 747 at 788.
[15] See Exhibit 5 of Exhibit B to Document 34.
[16] See Exhibit 3 of Exhibit B to Document 34.
[17] *Id.*
[18] See Exhibit 5 of Exhibit B to Document 34.

11

manufacturers, and its board of directors controls the American subsidiaries. NLMK International is the owner of a variety of NLMK trading and/or sales companies and one steel mill. Steel Invest & Finance S.A. owns 51% of NLMK Belgium Holdings S.A. and 100% of IA Steel Sales Sri. NLMK Belgium Holdings owns 100% of NLMK Verona SpA and no less than 99.92% of a variety of other NLMK-branded mills, manufacturers, and sales companies in Europe.[19]

Sentry's justification for piercing the corporate veil is that NLMK NA and NLMK Verona operate under the corporate umbrella of OJSC NLMK, and NLMK NA purchases the steel plates it sells to its customers from affiliated manufacturing entities, including NLMK Verona. There is no dispute that the NLMK NA and NLMK Verona are affiliated companies. However, NLMK NA does not own or operate facilities for the manufacturing of steel plates. In order to fill customers' orders, NLMK NA purchases steel plates manufactured by NLMK Verona and others.[20] NLMK NA has its own financial and accounting department and manages its own financial affairs.[21] NLMK NA keeps its own separate accounting books, records and financial statements.[22] The mere fact that NLMK NA "has a defined role in a broader corporate structure and interacts with its affiliates is hardly surprising, and does not support piercing the corporate veil." *Theravectys SA v. Immune Design Corp.*, 2014 WL 5500506 at *2-3 (Del. Ch. 2014). Most significantly, Sentry has not come forward with any evidence showing fraud or similar injustice in connection with NLMK NA's corporate form. There is no allegation that NLMK NA is perpetrating a fraud on third parties by operating under a corporate structure consisting of distinct but affiliated corporate entities. Sentry cannot, therefore, rely upon Delaware's alter ego doctrine to support its redhibition claim.

---

[19] *Id.*
[20] Affidavit of Thomas Ernst, Exhibit A to Document 28.
[21] Affidavit of Kathleen Longo, Exhibit B to Document 28.
[22] *Id.*

Finally, Sentry argues that the corporate separateness of NLMK NA and NLMK Verona should be ignored under Delaware's "agency theory." Under Delaware law, a corporate parent may be liable for the acts of its subsidiary if "the subsidiary acted as an agent of the parent." *Traxys North America LLC v. Evraz Claymont Steel, Inc., et al*, 2011 WL 1322780 (D. Del. April 4, 2011) (citing *Phoenix Canada Oil Co., Ltd. V. Texaco, Inc.*, 842 F.2d 1466 (3d Cir 1988)). To pierce the veil under an agency theory, the proponent must show (1) an agency arrangement between the affiliated companies, and (2) "that the arrangement is related to the cause of action." *Id.* The case cited by Sentry, *Traxys*, illustrates these requirements. In that case, Claymont, the steel manufacturing subsidiary of the defendant, Evraz Claymont Steel, purchased silicon manganese from Traxys but failed to pay. Traxys then sued Evraz Claymont, not Claymont. On summary judgment, the court concluded that there was a question of fact as to whether Claymont was acting as Evraz Claymont's agent in the transaction and that any such agency relationship involved the sale underlying Traxys' contract claim. In contrast to *Traxys*, Sentry cannot establish the requirements for agency liability. Even if Sentry can create a fact question as to an agency relationship between NLMK NA and NLMK Verona, it has not come forward with any summary judgment evidence connecting that agency arrangement to the purchase of defective plates from Thyssen. The summary judgment record reveals no involvement by NLMK NA in that sale.

For these reasons, the court finds Sentry cannot establish that NLMK NA operates as the alter ego or agent of NLMK Verona under Delaware law. As a result, Sentry cannot impute NLMK Verona's role as a seller or manufacturer in connection with the Thyssen sale to NLMK NA for purposes of a redhibition claim. In sum, NLMK NA was not the manufacturer nor the seller of the defective steel plates sold by Thyssen. Accordingly, Sentry cannot offset the price of these defective plates against the amounts due to NLMK NA.

## 4. Prescription

NLMK NA also argues that Sentry's redhibition claim has prescribed. The Court agrees. Louisiana redhibition claims prescribe either four years from the date the defective item was delivered to the buyer, or one year from the date the defect is discovered by the buyer, whichever occurs first. La. Civ. Code art. 2534. Based on the allegations in its Petition, Sentry knew by late November and early December 2013 that the steel plates it received from Thyssen were defective.[23] Sentry's redhibition claim thus prescribed no later than early December of 2014. The present suit, however, was not filed until July 8, 2016.

Sentry, however, asserts it may raise the prescribed redhibition claim as a defense pursuant to Louisiana Code of Civil Procedure Article 424, which provides that:

> A person who has a right to enforce an obligation also has a right to use his cause of action as a defense.
>
> Except as otherwise provided herein, a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff. A prescribed cause of action arising under The Federal Consumer Credit Protection Act may not be used as a defense even if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff.
>
> However, in connection with the enforcement of a negotiable instrument the defense of redhibition may not be used if it has otherwise prescribed.

To assert its prescribed redhibition claim as a defense, Sentry must thus satisfy two requirements. First, Sentry must prove that it would have a valid claim against NLMK NA for redhibition. Second, Sentry must prove that the redhibition claim is incidental to or connected with the claim by NLMK NA for failure to pay the sums due.

---

[23] Rec. Doc. 1-1, ¶ 3.

With respect to the first requirement, the Court has concluded that Sentry does not have a valid redhibition because NLMK NA was neither a seller nor a manufacturer with respect to the Thyssen sale. Sentry also cannot satisfy the second requirement that there be a connection between the redhibition claim and NLMK NA's open account claim. Sentry's redhibition claim is based upon an earlier purchase of defective steel plates from Thyssen. These earlier defective steel plates were procured by Thyssen from NLMK Verona, a separate company that is not a party in this action. The defendant here, NLMK NA was not a party to that earlier transaction. Accordingly, even if Sentry has grounds for a redhibition claim against Thyssen and NLMK Verona based on the 2013 sale of defective steel plates, it does not have a redhibition claim against defendant NLMK NA because the defendant had no connection to that earlier sale. As the parties concede, the plates purchased from NLMK NA in 2014 and 2015 were not defective. Moreover, as discussed previously, Sentry cannot rely on Louisiana's "single business enterprise" doctrine or Delaware's alter ego and agency doctrines to create a connection between the NLMK NA sale and the earlier sale of defective steel plates by Thyssen.

Sentry asserts that the case of *Dibert, Bankcroft & Ross Co. v. Westinghouse Air Brake Co.*, 323 So. 2d 482, 486 (La. App. 3 Cir. 12/18/1975) is directly on point. In *Dibert*, Westinghouse contracted with Dibert for the sale of castings to be used in construction of a large off-road vehicle. When the first two casting were received, Westinghouse advised Dibert that they were defective. Because of an internal office error, Westinghouse sent payment for the first two casting. Around the same time, Dibert shipped the third and fourth castings, which were received and used without incident. Westinghouse did not pay for the third and fourth castings based upon the defect. The court found that there was a "sufficient overall convexity between the ordering and subsequent delivery of castings number 1 and 2 and castings number 3 and 4" to permit the use of the prescribed redhibitory action as a defense.

15

The facts of *Dibert* are distinguishable from this case. In *Dibert*, there was essentially one transaction between the parties, the purchase of castings for one specific project where two castings received were defective while two were not. The connection between the claim for non-payment and the defense of a claim in redhibition in that case was clear. In the instant case, the court does not see such a clear connection. There were different purchase orders issued for the various steel plates involved. There were separate invoices sent for the various purchase orders. In sum, Sentry cannot establish a connection between the transactions and, hence, cannot satisfy the second requirement for avoiding prescription under Article 424.

### B. NLMK NA's Open Account Claim.

Louisiana Revised Statute 9:2781 authorizes an award of reasonable attorney fees when any person fails to pay an open account within 30 days after the claimant sends written demand therefor setting forth the amount owed. The statute defines an "open account" as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." The Louisiana Supreme Court has cautioned that attorney fees are "exceptional and penal in nature," so § 9:2781(A) should be strictly construed. *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014, 1015–16 (La.1984).

Under Louisiana law, claims for breach of contract are distinguishable from a claim based upon an open account. A contract is defined as "an agreement by two or more parties whereby obligations are created, modified, or extinguished." La. Civ. Code Art 1906. Louisiana courts define an open account as one in which "a line of credit is running and is open to future modification because of expectations of prospective business dealings." *Signlite, Inc. v. Northshore Service Center, Inc.*, 959 So.2d 904, 907 (La.Ct.App. 1st Cir.2007); *Tyler v. Haynes*, 760 So.2d 559, 563 (La.Ct.App.3d Cir.2000). Further, an open account "generally leaves

16

undetermined key aspects of the obligation, such as the time period during which services will be rendered or the total cost of the services for which a party may be liable." *Congress Square Ltd. Partnership v. Polk*, No. 10–317, 2011 WL 837144, at *5 (E.D.La. March 4, 2011). "In order to determine whether a contract constitutes an open account, Louisiana courts must consider: (1) whether other business transactions between the parties existed; (2) whether one party extended a line of credit to another; (3) whether there are running or current dealings; and (4) whether there are expectations of future dealings. *Paz v. BG Real Estate Services, Inc.*, 921 So.2d 186, 188 (La.2005). However, the Open Account Statute does not require that the parties anticipate future transactions. *Frey Plumbing Co., Inc. v. Foster*, 996 So.2d 969, 972 (La.2008)." *Technical Engineering Consultants, LLC v. Beall*, 2012 WL 4141425 (E.D. La. 2012).

Sentry sent NLMK NA six purchase orders. These purchase orders listed the prices for each requested plate but did not contain a total amount payable and payment for the plates was not due at that time.[24] NLMK NA then purchased the steel plates from a manufacturer and sent Sentry an invoice for the steel plates.[25] NLMK NA sent Sentry a total of twelve invoices for the plates order by Sentry and Sentry periodically made payments for those invoices.[26] The invoices include credit terms – i.e. "net 30" days for payment.[27] Sentry failed to pay the outstanding balance within 30 days of written demand by NLMK NA.[28] The transactions between the parties meet all of the requirements of an open account.

Sentry cites the cases of *Eastern Solutions, Inv. v. Al-Fouzan*, 103 So.3d 1190 (La. App. 3 Cir. 11/7/2012) and *Akers v. Bernhard Mech Constrs. Inc.*, 137 So. 3d 818 (La. App. 2 Cir. 4/16/2014) in support of the argument that the instant case does not meet the requirements of an

---

[24] Exhibit B-1 to NLMK North America's Memorandum in Support of Motion for Summary Judgment
[25] Exhibit B to NLMK North America's Memorandum in Support of Motion for Summary Judgment, ¶ 10.
[26] Exhibit B-4 to NLMK North America's Memorandum in Support of Motion for Summary Judgment.
[27] *Id.*
[28] Exhibit B to NLMK North America's Memorandum in Support of Motion for Summary Judgment, ¶ 17.

open account. Both cases, however, involved single transactions with a *total* fixed price that was agreed upon prior to either party acting to fulfill the contract. As such, the facts of those cases are distinguishable from the present case. NLMK NA has established the existence of an open account and is entitled to summary judgment on its claim.

## CONCLUSION

The court finds that there are no genuine issues of material fact as to the issues raised the Motion for Summary Judgment. The court finds that NLMK NA is entitled to judgment in the amount of $207,950.39 along with interest and attorney fees. In addition, the court finds that Sentry cannot assert a valid offset to this amount based on a redhibition claim. Within thirty (30) days, NLMK NA shall submit a statement of their attorney fees. After the statement is filed, Sentry will have 20 days to object to the reasonableness of the attorney fees. If no objection is filed, NLMK NA may submit a judgment in this matter incorporating the attorney fees.

THUS DONE in Chambers on this 27th day of March, 2019.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE